## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| RONALD VOGELER AND MARCIA VOGELER | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action: 3:22-cv-390 |
| | § | |
| EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS,  Inc., TRANS UNION LLC, and NATIONSTAR MORTGAGE LLC | § | With Jury Demand Endorsed |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Ronald and Marcia Vogeler ("Plaintiffs"), by and through counsel, for their Complaint against Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, states as follows:

### I.   INTRODUCTION

1.      Three of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA").

## II.  PARTIES

2.      Plaintiffs, Ronald and Marcia Vogeler, are natural persons residing in Winnebago County, Illinois, and are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to

third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.      Upon information and belief, Defendant Nationstar Mortgage LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on

consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

8.    Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9.    Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district.

Nationstar managed Plaintiffs' mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

11.     Plaintiffs secured a mortgage for their property located at 9849 Highstone Drive, Roscoe, IL 60173.

12.     Sometime thereafter, Nationstar Mortgage LLC acquired Plaintiffs' mortgage loan for their property and assigned loan number 62145****, hereinafter ("Nationstar mortgage account").

13.     On May 3, 2016, Plaintiffs jointly filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiffs' chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

14.     On November 8, 2016, Plaintiffs' Chapter 13 payment plan was confirmed. A redacted copy of Plaintiffs' Chapter 13 Payment Plan is attached hereto as Exhibit "B".

15.     On August 23, 2019, Plaintiffs were discharged form their chapter 13 bankruptcy, maintained ownership of the Nationstar Mortgage, and continued to make regular monthly payments to the Nationstar Mortgage since their bankruptcy was ordered to be discharged. A redacted copy of Plaintiffs' Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "C".

16.     To this day, Plaintiffs still live in the home and make timely and regular mortgage payments to the Nationstar Mortgage and plan on continuing to make timely and regular mortgage payments to the Nationstar Mortgage.

17.     Sometime in July 2021, Plaintiffs obtained their three-bureau credit report and

noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate. A redacted copy of Plaintiffs' three-bureau credit report is attached hereto as Exhibit "D" and incorporated by reference herein.

18.    Within the Equifax credit report Plaintiffs noticed that it reported the Nationstar mortgage account as having late payments for January 2018, March 2018, May 2018, July 2018, August 2018, October 2018, and December 2018. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, the payments should not be reporting as late because of Plaintiffs' chapter 13 bankruptcy filing[1], and the fact both Plaintiffs were successfully discharged—any reference to their chapter 13 bankruptcy should have been removed from the Nationstar mortgage tradelines[2].

19.    Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to have suppression codes associated with bankruptcy reporting accounts after the petition is filed, so that the ongoing payments history for the consumer's will not be reported.

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

20.    Within the Experian credit report Plaintiffs noticed that it reported the Nationstar mortgage account as having late payments for January 2018, March 2018, May 2018, July 2018, August 2018, October 2018, and December 2018. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, the payments should not be reporting as late because of Plaintiffs' chapter 13 bankruptcy filing, and the fact both Plaintiffs were successfully discharged—any reference to their chapter 13 bankruptcy should have been removed from the Nationstar Mortgage tradelines.

21.    Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

22.    Within the Trans Union credit report Plaintiffs noticed that it reported the Nationstar mortgage account as having late payments for January 2018, March 2018, May 2018, July 2018,

August 2018, October 2018, and December 2018. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, the payments should not be reporting as late because of Plaintiffs' chapter 13 bankruptcy filing, and the fact both Plaintiffs were successfully discharged—any reference to their chapter 13 bankruptcy should have been removed from the Nationstar Mortgage tradelines.

23.    Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

24.    On or about August 2021, Plaintiffs sent direct disputes to Equifax, Experian, and Trans Union, and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiffs requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Nationstar mortgage account.

25.    Within these dispute letters, Plaintiffs described in great detail the issues and the misreporting following their respective bankruptcies and enclosed copies of either their bankruptcy

docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiffs' unsigned dispute letters sent to Equifax, Experian, and Trans Union are each attached hereto as Exhibit "E".

26.     Equifax responded to each Plaintiff on September 1, 2021 and concerning the Nationstar tradeline removed the late payments but new issues arose including reporting my account as closed, transferred, with a $0 balance, and a $0 payment amount despite being discharged from chapter 13 bankruptcy. Redacted copies of Equifax's Responses to each Plaintiff is attached hereto as Exhibit "F".

<u>Plaintiffs' Second Round Dispute Letters to Equifax</u>

27.     On or about end of September 2021, Plaintiffs sent another direct dispute to Equifax, and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiffs again requested that under the FCRA, the CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Nationstar mortgage account.

28.     Within these dispute letter, Plaintiffs described in great detail the issues and the misreporting following their respective bankruptcies and enclosed copies of either their bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiffs' second unsigned dispute letters sent to Equifax are each attached hereto as Exhibit "G".

29.     Equifax responded to Plaintiff Ronald Vogeler on October 30, 2021 and concerning the Nationstar tradeline updated to pays as agreed but still showed the balance as $0 despite being discharged from chapter 13 bankruptcy. A redacted copy of Equifax's October 30, 2021 Response to Plaintiff Ronald Vogeler is attached hereto as Exhibit "H".

30.     Equifax responded to Plaintiff Marcia Vogeler on October 30, 2021 and concerning

the Nationstar tradeline made no changes. A redacted copy of Equifax's October 30, 2021 Response to Plaintiff Marcia Vogeler is attached hereto as Exhibit "I".

31.    She then obtained an updated copy of her three-bureau credit report on November 16, 2021 and within the Equifax credit report Plaintiff Marcia Vogeler confirmed same despite being discharged from chapter 13 bankruptcy. A redacted copy of Plaintiff Marcia Vogeler's November 16, 2021 Three-bureau Credit Report is attached hereto as Exhibit "J".

32.    Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar Mortgage tradeline when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, were successfully discharged, and continued to make payments on the Nationstar Mortgage and Nationstar Mortgage accounts because it was still open following the bankruptcy discharge.

33.    Equifax's responses were not the result of reasonable investigations into Plaintiffs' disputes for they did not adequately evaluate or consider Plaintiffs' information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar Mortgage tradelines.

34.    Plaintiffs sent very clear disputes, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

35.    Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Nationstar account.

36.    Upon the Plaintiffs' request to Equifax for verification and addition regarding the

Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiffs' information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

37.     In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

38.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

39.     Experian received Plaintiff Ronald Vogeler's dispute on August 10, 2021. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Tracking No. 70201810000027137627 is attached hereto as Exhibit "K".

40.     Upon information and belief, Experian did not respond to Plaintiff Ronald Vogeler's dispute.

41.     Plaintiff Ronald Vogeler then obtained an updated copy of his three-bureau credit report however on September 22, 2021 and within the Experian credit report Plaintiff Ronald Vogeler noticed that the Nationstar tradeline showed the disputed issues were resolved. A redacted copy of Plaintiff Ronald Vogeler's September 22, 2021 Three-bureau Credit Report is attached hereto as Exhibit "L".

42.     Experian received Plaintiff Marcia Vogeler's dispute on August 9, 2021. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Tracking No. 70201810000027137658

is attached hereto as Exhibit "M".

43.    Upon information and belief, Experian did not respond to Plaintiff Marcia Vogeler's dispute.

44.    Plaintiff Marcia Vogeler then obtained an updated copy of her three-bureau credit report on September 22, 2021 and within the Experian credit report Plaintiff Marcia Vogeler noticed that unlike Ronald's the Nationstar tradeline was missing tradeline, presumably deleted. A redacted copy of Plaintiff Marcia Vogeler's September 22, 2021 Three-bureau Credit Report is attached hereto as Exhibit "N".

<u>Plaintiff Marcia Vogeler's Second Round Dispute to Experian</u>

45.    On or about the end of September 2021 Plaintiff Marcia Vogeler sent another direct dispute to Experian and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiffs requested that under the FCRA, the CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Nationstar mortgage account.

46.    Within this dispute letter, Plaintiff Marcia Vogeler described in great detail the issues and the misreporting following their respective bankruptcies and enclosed copies of either her bankruptcy docket report, trustee final report, and/or discharge order. A redacted copy of Plaintiff Marcia Vogeler's second unsigned dispute letter sent to Experian is attached hereto as Exhibit "O".

47.    Experian responded to Plaintiff Marcia Vogeler on October 7, 2021 and concerning the Nationstar tradeline did not address the loan at issue. A redacted copy of Experian's Response to Plaintiff Marcia Vogeler is attached hereto as Exhibit "P".

48.    Plaintiff Marcia Vogeler then obtained an updated copy of her three-bureau credit report on November 16, 2021 and within the Experian credit report Plaintiff Marcia Vogeler noticed that the Nationstar tradeline was still missing. *See* Exhibit "J".

49.    Experian's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff Marcia Vogeler's disputes and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar tradeline when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, were successfully discharged, and continued to make payments on the Nationstar Mortgage and Nationstar Mortgage accounts because it was still open following the bankruptcy discharge.

50.    Experian's responses were not the result of reasonable investigations into Plaintiff Marcia Vogeler's disputes for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar Mortgage tradelines.

51.     Plaintiff sent very clear disputes, and yet Experian made no changes to the disputed information, bankruptcy status, and/or account status.

52.    Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Nationstar account.

53.    Upon the Plaintiffs' request to Experian for verification and addition regarding the Nationstar mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Experian failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Experian did not make any

attempt to substantially or reasonably verify the Nationstar Mortgage account.

54.    In the alternative, and in accordance with Experian's standard procedures, Experian failed to contact Nationstar, therefore, failed to perform any investigation at all.

55.    In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

56.    Trans Union responded to Plaintiff Ronald Vogeler on September 1, 2021 and concerning the Nationstar tradeline made the corrections. A redacted copy of Trans Union's Response to Plaintiff Ronald Vogeler is attached hereto as Exhibit "Q".

57.    Trans Union responded to Plaintiff Marcia Vogeler on August 10, 2021 and concerning the Nationstar tradeline removed the late payments but new issues arose including reporting the account as closed, derogatory, with a Chapter 13 notation in the creditor's remarks, a $0 balance, and a $0 payment amount despite being discharged from chapter 13 bankruptcy. A redacted copy of Trans Union's Response to Plaintiff Marcia Vogeler is attached hereto as Exhibit "R".

<u>Plaintiff Marcia Vogeler's Second Round Dispute to Trans Union</u>

58.    On or about the end of September 2021 Plaintiff Marcia Vogeler sent another direct dispute to Trans Union and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiff requested that under the FCRA, the CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account.

59.    Within this dispute letter, Plaintiff Marcia Vogeler described in great detail the issues

and the misreporting following their respective bankruptcies and enclosed copies of either her bankruptcy docket report, trustee final report, and/or discharge order. A redacted copy of Plaintiff Marcia Vogeler's second unsigned dispute letter sent to Trans Union is attached hereto as Exhibit "S".

60.    Trans Union responded to Plaintiff Marcia Vogeler on October 18, 2021 and concerning the Nationstar tradeline made no changes despite being discharged from chapter 13 bankruptcy. A redacted copy of Trans Union's Response to Plaintiff Marcia Vogeler is attached hereto as Exhibit "T".

61.    Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff Marcia Vogeler's disputes and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar tradeline when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, were successfully discharged, and continued to make payments on the Nationstar Mortgage and Nationstar Mortgage accounts because it was still open following the bankruptcy discharge.

62.    Plaintiff sent very clear disputes, and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

63.    Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff Marcia Vogeler's Nationstar account.

64.    Upon the Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans

Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

65.     In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

66.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

67.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

68.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

69.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

70.     Plaintiffs furnished Equifax the necessary documentation supporting Plaintiffs' tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

71.     Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiff's' creditworthiness.

72.     As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

73.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

74.     The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

75.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

76.     Equifax violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

77.     As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the

ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

78.    Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

79.    The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

80.    Plaintiff Marcia Vogeler realleges and incorporates all paragraphs above as if fully set out herein.

81.    Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

82.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

83.    Plaintiff furnished Experian the necessary documentation supporting Plaintiff's tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiff

Marcia Vogeler.

84.    Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

85.    After Experian knew or should have known Plaintiff's account status in relation to their bankruptcy were inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

86.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

87.    Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

88.    Plaintiff Marcia Vogeler is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.


**COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**


89.    Plaintiff Marcia Vogeler realleges and incorporates all paragraphs above as if fully set out herein.

90.     Experian violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

91.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

92.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

93.     Plaintiff Marcia Vogeler is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT V – TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

94.     Plaintiff Marcia Vogeler realleges and incorporates all paragraphs above as if fully set out herein.

95.     Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

96.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

97.     Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

98.     Despite actual and implied knowledge that Plaintiff's credit reports was and is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

99.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

100.     Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

101.     Plaintiff Marcia Vogeler is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

102.     Plaintiff Marcia Vogeler realleges and incorporates all paragraphs above as if fully

set out herein.

103.    Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

104.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

105.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

106.    Plaintiff Marcia Vogeler is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.


**COUNT VII – NATIONSTAR'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

107.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

108.    Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer

reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

109.    Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

110.    As a result of Nationstar's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

111.    Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

112.    Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority,

through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

113.    Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

114.    Plaintiffs respectfully request that this Honorable Court award Plaintiffs their litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA  and/or other laws.

115.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

116.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

117.    Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

118.    Defendants have negligently and/or willfully violated various provisions of the FCRA, and are thereby liable unto Plaintiffs.

119.    Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but

not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs, Ronald and Marcia Vogeler, pray that this Honorable Court:

A.    Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.    Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C.    Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D.    Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer

report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

       E.    Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.


Date Filed: <u>February 17, 2022</u>


                           Respectfully submitted,

                           */s/ Matthew P. Forsberg*
                           Matthew P. Forsberg
                           TX State Bar No. 24082581
                           FCRA-TX@FieldsLaw.com
                           FIELDS LAW FIRM
                           9999 Wayzata Blvd.
                           Minnetonka, Minnesota 55305
                           (612) 383-1868 (telephone)
                           (612) 370-4256 (fax)

                           **LAW OFFICE OF JONATHAN A. HEEPS**

                           */s/ Jonathan A. Heeps*     .
                           Jonathan A. Heeps
                           TX State Bar No. 24074387
                           LAW OFFICE OF JONATHAN A. HEEPS
                           Post Office Box 174372
                           Arlington, Texas 76003
                           Telephone (682) 738-6415
                           Fax (844) 738-6416
                           jaheeps@heepslaw.com


                           COUNSEL FOR PLAINTIFFS

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

February 17, 2022                         */s/ Matthew P. Forsberg*
Date                                      Matthew P. Forsberg